**Gordon BROCK, Plaintiff-Appellant,**

v.

**STOUT INDUSTRIES, INC., Defendant-Respondent.**

No. 50796.

Missouri Court of Appeals, Eastern District, Division One.

Sept. 30, 1986.

William E. Roussin, Roussin and Roach, St. Louis, for plaintiff-appellant.

Kent D. Kehr, Timothy E. Hayes, Coburn, Croft & Putzell, St. Louis, for defendant-respondent.

CARL R. GAERTNER, Presiding Judge.

Alleging his employer fired him for exercising his rights under the workers' compensation law, plaintiff filed a suit for damages under § 287.780, RSMo.1978.[1] At the close of the pleadings, employer successfully moved for summary judgment on the ground that the res judicata effect of a prior settlement of the grievance filed pursuant to the contract between defendant and plaintiff's union precluded a civil action on any claim arising from plaintiff's discharge. Plaintiff appeals. We affirm.

On December 6, 1984, defendant Stout Industries, Inc., discharged plaintiff Gordon Brock from its employ. Brock claimed Stout had discharged him solely because he had filed a claim for workers' compensation claim following a work-related accident. Stout, on the other hand, maintained it had fired Brock because Brock had made false and misleading statements in connection with the claim.

Because Brock was a member of Process Sign Workers Local Union No. 1574, his employment relationship with Stout was governed by the collective bargaining agreement between Stout and the union. The agreement establishes a grievance procedure for the resolution of disputes arising out of the employment relationship and specifically provides that resolution of a grievance in accordance with the procedure shall be final and binding upon the parties to the agreement.

Brock made his discharge the subject of a grievance that was duly processed in accordance with the agreement's terms and eventually settled. The pertinent terms of the settlement are recounted in the Letter of Resolution of Grievance:

> As a matter of settlement and compromise of the Brock grievance, the company reinstates Gordon Brock to his employment with Stout Industries under the following terms and conditions
>
> that the company still considers Mr. Brock's presentation of the events surrounding his accident of 11/21/84 to be a misrepresentation of the facts and a letter to this effect shall be placed in his personal file. . . .

After Brock returned to work, he filed a § 287.780 suit against Stout alleging wrongful discharge. The lower court granted Stout summary judgment. Brock asserts this was error.

It has long been the rule in Missouri that if a collective bargaining agreement establishes a procedure for the definitive settlement of employee grievances, a settlement reached in accordance with the procedure is final and precludes a subsequent civil suit on the merits of the grievance. *Grubb v.*

1. Section 287.780, RSMo.1978, provides: "No employer or agent shall discharge or in any way discriminate against any employee for exercising his rights under this chapter [the Workers' Compensation Law]. Any employee who has been discharged or discriminated against shall have a civil action for damages against his employer."

*Leroy L. Wade & Son, Inc.,* 384 S.W.2d 528, 533 (Mo.1964). The rule has been variously characterized as one of collateral estoppel, *Cooper v. Yellow Freight System, Inc.,* 589 S.W.2d 643, 645 (Mo.App.1979), or res judicata, *Oduselu v. Contico International, Inc.,* 627 S.W.2d 70, 72 (Mo.App. 1981), but more fundamentally it is a rule of "public policy, which favors collective bargaining agreements fixing conditions of employment between labor and management," *Grubb v. Leroy L. Wade & Son, Inc., supra.*

Plaintiff cites *McKiness v. Western Union Telegraph Company,* 667 S.W.2d 738, (Mo.App.1984), for the proposition that exhaustion of his remedies under the collective bargaining agreement is merely a prerequisite, and not a bar, to a suit for damages under § 287.780. We find the citation inapposite. In *McKiness* this court observed that "where a collective bargaining agreement provides a grievance procedure for the settlement of disputes between the employer and the union or the employee, the party aggrieved must exhaust the remedies provided by the agreement before resorting to the courts for redress." 667 S.W.2d at 741. This statement, abstracted from its context, would seem to support plaintiff's position. In *McKiness,* however, the question before us was merely whether a plaintiff could, on her way to a suit for damages under § 287.780, by-pass and ignore the remedies available to her under a collective bargaining agreement. Our answer was, "No." In that case, however, the terms of the collective bargaining agreement were not at issue and whether the agreement provided that its remedies were exclusive was undisclosed. In *McKiness,* therefore, we did not consider whether the collective bargaining agreement provided plaintiff her *only* remedy, but that is precisely what is at issue here.

The collective bargaining agreement in this case provides: "All grievances shall be settled and determined exclusively by the Grievance Procedure ... [A] decision at any level which is not appealed within the specified time to the next higher step shall be binding upon all parties...." Plaintiff invoked the grievance procedure and in the first step thereof obtained reinstatement. With this, the dispute must end. If we may borrow an observation of the Supreme Court in *Grubb,* settlement in this case "was an exercise of industrial self-government under the grievance machinery of this collective bargaining agreement. Under the rule of law these parties have agreed upon, the decision ... is final and binding, and this court has 'no business weighing the merits of the grievance.'" 384 S.W.2d at 534.

Plaintiff objects that he is not asking the court to re-weigh the merits of his grievance. He claims the merits were decided in his favor, pursuant to the grievance procedure, and now he merely seeks damages, a remedy not available to him under the collective bargaining agreement. Plaintiff, however, may not employ the agreement's grievance machinery to gain reinstatement and then ignore its exclusivity provisions. "Having invoked the collective bargaining agreement as the foundation of [his] claim [plaintiff] may not pick and choose its favorable, while ignoring its unfavorable, provisions. The bitter goes with the sweet." *Id.* at 533.

The judgment is affirmed.

SMITH and SNYDER, JJ., concur.